Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310-474-9111
Facsimile:   310-474-8585

Carter Greenbaum (SBN 344692)
carter@greenbaumolbrantz.com
**GREENBAUM OLBRANTZ LLP**
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
Tel: 212-732-6837

*Counsel for Plaintiff and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID VANCE GARDNER, on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **ACTION SEEKING STATEWIDE OF NATIONWIDE RELIEF** |
| RUNWAY AI, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

CLASS ACTION COMPLAINT

Plaintiff David Vance Gardner ("Mr. Gardner" or "Plaintiff"), by and through his undersigned counsel, individually and on behalf of all others similarly situated, alleges the following against Defendant Runway AI, Inc. ("Runway AI" or "Defendant"):

## INTRODUCTION

1.      Defendant Runway AI, Inc. is a company specializing in generative artificial intelligence ("AI") that generates videos, images, and other multimedia content. Defendant unlawfully accessed and extracted copyrighted videos from YouTube, an online video sharing platform, to train its generative AI model.

2.      Runway AI provides its users the ability to issue prompts to its AI system and generate videos, images, and other multimedia content. Runway AI profits from selling users access to this product.[1]

3.      To develop Runway AI's ability to generate multimedia content, Runway AI extracted and used copyrighted works from YouTube video creators without the consent of the creators. Runway AI bypassed restrictions on YouTube that protects the copyrighted works of YouTube users. Runway AI unlawfully profited from taking and using YouTube creators' works without permission.

4.      Plaintiff brings this class action on behalf of himself and of a nationwide class of YouTube creators whose works were accessed and extracted by Runway AI without their authorization. Plaintiff and the nationwide class seek statutory damages, injunctive relief, restitution, and all other remedies allowed by law pursuant to the Digital Millennium Copyright Act, 17 U.S.C.A. § 1201(a); California Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*; and Unjust Enrichment.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act). The matter in controversy, exclusive

---

[1] *Choose the best plan for you*, Runway, https://runwayml.com/pricing (last accessed February 23, 2026).

CLASS ACTION COMPLAINT

of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00) and one or more Class Members are citizens of a state different from the state of Defendant. This Court also has subject matter jurisdiction because this action arises under 17 U.S.C. § 1201, et seq. (the Digital Millennium Copyright Act ("DMCA")).

6. The Court has personal jurisdiction over Defendant who conduct significant business in this District, thus availing themselves of California's markets by providing their products and services therein; it has sufficient minimum contacts with California; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District.

7. Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b)(2) because Defendant conducted its affairs in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

8. Plaintiff David Vance Gardner ("Gardner" or "Plaintiff") is an individual residing in the Los Angeles County in the State of California and the owner of copyrighted audiovisual works published on YouTube. Plaintiff operates one or more YouTube channels through which he publishes original video content. Plaintiff invested substantial time, labor, skill, and financial resources into creating, producing, editing, and distributing his video content.

9. Defendant Runway AI, Inc. ("Runway" or "Defendant") is a Delaware corporation specializing in generative AI that generates audiovisual content. Its principal place of business in New York, New York.

## FACTUAL ALLEGATIONS

**I. Runway AI, Inc. Impermissibly Extracted and Used YouTube Creator Content**

10. Plaintiff and Class Members are creators of original audiovisual works, including videos. Plaintiff and Class Members uploaded their videos onto YouTube's online platform.

11. YouTube operates as a digital distribution service for audiovisual works.

2

CLASS ACTION COMPLAINT

Creators who upload content retain their copyright interests, including the right to control licensing and downstream uses. The platform provides a mechanism for public viewing, not a transfer of ownership or unrestricted access to the underlying files.

12. Individuals who access YouTube's service may stream audiovisual content—typically through an advertising-supported model—but they are not provided access to the downloadable source files that comprise those works.

13. YouTube employs technological protection measures ("TPMs") designed to regulate access to creator videos. These measures include streaming-only access for its regular users and controls that prevent regular users from directly downloading content.

14. YouTube's Terms of Service expressly prohibits YouTube users from accessing YouTube services through automated means, such as using robots, botnets, or scrapers.[2]

15. Further, the Terms of Service does not permit users to: "access, reproduce, download, distribute, transmit, broadcast, display, sell, license, alter, modify or otherwise use any part of the Service or any Content except: (a) as expressly authorized by the Service; or (b) with prior written permission from YouTube and, if applicable, the respective rights holders."[3]

16. These contractual restrictions function in tandem with TPMs to maintain creators' control over their works.

17. When creators upload content, they retain ownership rights but grant YouTube and its users a limited license to access the work through YouTube's service.[4]

18. The license does not authorize use of the content independent of the platform itself.[5] YouTube's Terms of Service also clearly states that creators grant YouTube the

---

[2] *Terms of Service*, YouTube, https://www.youtube.com/t/terms (last viewed February 23, 2026)
[3] *Id*.
[4] *Id*.
[5] *Terms of Service*, YouTube, https://www.youtube.com/t/terms (last viewed February 23, 2026) ("For clarity, this license does not grant any rights or permissions for a user to make use of your Content independent of the Service."

CLASS ACTION COMPLAINT

platform "the right to monetize . . . [c]ontent."[6] The terms do not grant other entities this right.

19.   Thus, the right conveyed to YouTube users is one of access, not possession, of the audiovisual work. This structure reflects a deliberate design choice: users may view and stream content within YouTube's platform, but they are not granted unfettered ability to download the videos.

20.   The difference between streaming and downloading is material. Streaming provides YouTube users temporary access to videos uploaded to YouTube; downloading creates a durable copy capable of independent use and redistribution.

21.   Accordingly, scraping and downloading do not merely replicate what users are already permitted to do. Such actions involve obtaining access to files that the platform affirmatively withholds from public download.

22.   YouTube does not provide ordinary users the ability to download content uploaded to YouTube. Even for subscribers to YouTube's Premium service, the "download" feature permits only limited offline streaming within the YouTube application. The Premium service subscriber cannot access the videos without YouTube's video platform.[7] Once downloaded, the videos can be played offline for a maximum of 29 days.[8]

23.   YouTube has implemented a consent-based framework regarding third-party AI training.[9] Under this framework, creators must affirmatively opt in before any third-party AI company may use their videos for model training.[10]

24.   By default, the third-party training setting is disabled. Absent affirmative action by the creator, YouTube does not permit third-party AI developers to use their

---

[6] *Terms of Service*, YouTube, https://www.youtube.com/t/terms (last viewed February 23, 2026)
[7] *Watch videos offline with YouTube Premium*, YouTube Help, https://support.google.com/youtube/answer/11977233 (last accessed February 23, 2026).
[8] *Id.*
[9] *Your content & third-party training*, YouTube Help, https://support.google.com/youtube/answer/15509945?hl=en
[10] *Id.*

4

CLASS ACTION COMPLAINT

YouTube videos.[11]

25.     Even when opting in, creators must make a deliberate selection—either identifying specific companies that can use creator content or granting broader authorization. In other words, YouTube does not presume consent for AI training; it requires it.

## II.    Defendant Unlawfully Extracted Content for Profit

26.     Defendant Runway AI is a technology company that develops and commercializes generative AI to generate video content. In 2024, Defendant publicly released a model known as "Gen-3."[12]

27.     Defendant markets its generative AI technology as a commercial product. Defendant's product produces revenue for Defendant.

28.     Defendant refuses to be transparent regarding the sources of the data that it used to train Gen-3, describing its datasets only in generalized terms.[13] Investigative reporting in 2024 disclosed that Runway AI scraped thousands of YouTube channels and videos.[14] Defendant's CEO has refused to disclose which videos Runway AI used for AI training.  But more recent reporting has suggested that companies including Defendant Runway AI, have unlawfully scraped 15 million videos from YouTube channels.[15]

29.     According to a former employee, Defendant used automated scraping tools to download YouTube creator videos, employing downloading software to avoid detection.[16]

---

[11] *Id.*

[12] *Introducing Gen-3 Alpha: A New Frontier for Video Generation*, https://runwayml.com/research/introducing-gen-3-alpha (last accessed February 23, 2026).

[13] Samantha Cole, *Runway Ripped Off YouTube Creators*, 404 Media (July 25, 2024), available at: https://www.404media.co/email/64056c13-be6e-46e7-8c90-b53dd30026f2/?ref=werd.io (last accessed February 23, 2026)

[14] AI Watchdog: Runway Gen-3, The Atlantic, https://www.theatlantic.com/technology/archive/2025/09/dataset-runway-gen-3/684045/ (last accessed February 23, 2026).

[15] Alex Reisner, AI is Coming For YouTube Creators (September 20, 2025), available at https://www.theatlantic.com/technology/archive/2025/09/youtube-ai-training-data-sets/

[16] Samantha Cole, *Runway Ripped Off YouTube Creators*, 404 Media (July 25, 2024), available at: https://www.404media.co/email/64056c13-be6e-46e7-8c90-b53dd30026f2/?ref=werd.io (last accessed February 23, 2026)

CLASS ACTION COMPLAINT

Rather than obtain consent or licenses, Defendant allegedly accessed the content by bypassing the platform's protective measures.

30.    Defendant used the content it unlawfully obtained to enhance its generative AI system and develop its commercial generative AI product.

31.    Defendant's methods, as described, involved extracting the content and works of YouTube creators rather than merely viewing content through authorized streaming interfaces.

32.    On information and belief, the use of automated scrapers enabled Defendant to extract YouTube creators' audiovisual works while avoiding YouTube's platform detection mechanisms.

33.    Defendant did not obtain consent from Plaintiff or other creators and continued extracting content, contravening licensing restrictions.

34.    The alleged conduct was deliberate and systematic, undertaken to acquire large quantities of copyrighted audiovisual works for integration into its commercial generative AI platform.

35.    Defendant extracted YouTube creator content to generate revenue and strengthen Defendant's market position in the generative AI market.

### III.    Defendant's Actions Violated the Rights of Plaintiff and Class Members

36.    Defendant did not seek authorization from or compensate Plaintiff and Class Members for the use of their works in AI training.

37.    Defendant incorporated Plaintiff and Class Members' works into a machine-learning model and profited from, and continue to profit from, those works.

38.    Plaintiff and Class Members relied on YouTube's Terms of Service in deciding to publish their works on YouTube. Plaintiff and Class Members relied on YouTube's prohibitions against unauthorized scraping and extraction when Plaintiff and Class Members uploaded their content onto the platform.

39.    Defendant, in extracting the works of YouTube creators without their consent for profit, Defendant violated creators' rights and expectations.

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

49.    Pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), Plaintiff seeks certification of the following nationwide Class (the "Class" or the "Nationwide Class"):

> **All natural persons and entities in the United States who are creators and/or rights-holders of YouTube-hosted videos that Runway accessed at the file level by scraping, downloading, or otherwise extracting underlying video files from YouTube through circumvention of YouTube's TPMs (the "Class").**

50.    Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) Defendant, their subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant, or their parents, have a controlling interest, and their current or former officers and directors.

51.    Plaintiff reserves the right to amend or modify the class definitions after having had an opportunity to conduct discovery.

52.    **Numerosity**: While the precise number of Class members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable, as the proposed Class appears to include over one million members who are geographically dispersed.

53.    **Typicality**: Plaintiff's claims are typical of Class members' claims. Plaintiff and all Class members were injured through Defendant's uniform misconduct, and Plaintiff's claims are identical to the claims of the Class members they seek to represent. Accordingly, Plaintiff's claims are typical of Class members' claims.

54.    **Adequacy**: Plaintiff's interests are aligned with the Class Plaintiff seeks to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously.

7

CLASS ACTION COMPLAINT

The Class's interests are well-represented by Plaintiff and undersigned counsel.

55. **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class member's claims. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class members individually to effectively redress Defendant's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

56. **Commonality and Predominance:** The following questions common to all Class members predominate over any potential questions affecting individual Class members:

    a.    Whether YouTube implements a "technology measure that effectively controls access" to copyrighted audiovisual works on the YouTube platform within the meaning of 17 U.S.C. § 1201(a)

    b.    Whether Runway AI extracted Plaintiff's and Class Members' copyrighted works to train and develop its generative AI systems

    c.    Whether Runway AI acquired and used YouTube creator videos from a dataset created by Runway AI to train and develop its generative AI systems

    d.    Whether YouTube's TPMs and Terms of Service protects YouTube creators from the manner in which Runway AI extracted YouTube creator videos

    e.    Whether Runway AI trafficked in a "technology, product, service, device,

8

CLASS ACTION COMPLAINT

component, or part thereof" that was designed or produced to "circumvent[] a technological measure that effectively controls access to a work" within the meaning of 17 U.S.C. § 1201(b)

f.    Whether Runway AI violated 17 U.S.C. § 1201(a) and 17 U.S.C. § 1201(b) by circumventing YouTube's technology measures controlling access to copyrighted audiovisual works

g.    Whether Runway AI willfully and knowingly extracted creator videos for profit

h.    Whether Runway AI caused Plaintiff and Class Members injury by extracting creator videos and depriving Plaintiff and Class Members control over their Works

i.    Whether Plaintiff and Class Members are entitled to declaratory and injunctive relief requiring Runway AI to abide by YouTube's Terms of Service and other policies implemented to protect creator content from unlawful access and use

j.    Whether Plaintiff and Class Members are entitled to statutory damages under 17 U.S.C. § 1203(c) based on Runway's violations of 17 U.S.C. § 1201.

57.    **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

58.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

59.    Finally, all members of the proposed Class are readily ascertainable. Defendant have access to information regarding the individuals who accessed their content. Using this information, Class members can be identified and their contact information

CLASS ACTION COMPLAINT

ascertained for the purpose of providing notice to the Class.

### FIRST CLAIM FOR RELIEF
### VIOLATION OF 17 U.S.C. § 1201(A),
### DMCA ANTI-CIRCUMVENTION

60.    Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

61.    YouTube prohibits the extraction and scraping of the works of YouTube creators through its Terms of Service and TPMs.

62.    Plaintiff and Class Members are YouTube creators that relied on YouTube's Terms of Service and TPMs when they decided to upload their works to YouTube's video sharing platform.

63.    YouTube guaranteed to Plaintiff and Class Members that YouTube required their consent prior to their works being used to train generative AI.

64.    Plaintiff and Class Members expected that access to and use of their works would be governed by YouTube's Terms of Service and TPMs.

65.    YouTube's Terms of Service and other protections constitute "effective technological measures" within the meaning of 17 U.S.C. §1201.

66.    Defendant improperly and unlawfully extracted works created by YouTube creators, including Plaintiff and Class Members, violating 17 U.S.C. §1201.

67.    Defendant extracted and used the works of Plaintiff and Class Members to train its generative AI system. Each extraction or use by Defendant constitutes a separate violation of 17 U.S.C. §1201. Each infringing act by Defendant constitutes a willful violation.

68.    Plaintiff and the Class Members are entitled to statutory damages, injunctive relief, impoundment, and attorneys' fees and costs under 17 U.S.C. §1203.

### SECOND CLAIM FOR RELIEF
**Violations of the California Unfair Competition Law,**
**Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL")**

CLASS ACTION COMPLAINT

49. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

50. Defendant's conduct constitutes unfair, illegal, and fraudulent business practices within the meaning of the California Business & Professions Code § 17200, *et seq.* (the "UCL").

51. Defendant's conduct violated certain laws as alleged herein, including 17 U.S.C. § 1201(A). By engaging in the said conduct in the course of doing business within California, Defendant engaged in unlawful business practices in violation of the UCL as to Plaintiff and all Class Members.

52. By engaging in the above-described conduct in the course of doing business, Defendant engaged in unfair business practices in violation of the UCL because the harm to Plaintiff and Class Members outweighed any utility that Defendant's conduct may have produced.

53. Defendant's extraction and use of YouTube creator content without creator consent constitutes a fraudulent act or practice in violation of the UCL. Defendant's failure to abide by YouTube's Terms of Service and other policies implemented to protect YouTube content creators also constitutes a fraudulent act or practice in violation of the UCL.

54. Plaintiff and Class Members suffered injury in fact as a result of Defendant's conduct.

55. Individually and on behalf of the Class, Plaintiff seeks injunctive relief, restitution, and all other damages available under this cause of action.

### THIRD CLAIM FOR RELIEF
**Unjust Enrichment**

56. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

57. Defendant received a benefit from their extraction and use of Plaintiff's and Class Members' works, including training its generative AI system and profiting from the

11

CLASS ACTION COMPLAINT

generative AI system trained through Plaintiff's and Class Members' works.

58.     Upon information and belief, Defendant's collection and use of Plaintiff's and Class Members' works yielded significant monetary benefit to Defendant.

59.     Defendant enriched itself through extracting and using the works of Plaintiff and Class Members. Defendant's enrichment came at the direct expense of Plaintiff and Class Members. Defendant violated rights conferred by copyright law to Plaintiff and Class Members

60.     Plaintiff and Class Members were harmed by the benefit to Defendant, because Defendant violated Plaintiff and Class Members' rights to control, license, and use their works.

61.     Defendant should be compelled to disgorge the profits it accumulated as a result of its extraction and use of Plaintiff's and Class Members' works.

62.     Plaintiff seeks restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendant as a result of their unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of themselves and the Class, respectfully requests that this Court:

A.     Determine that the claims alleged herein may maintained as a class action under Federal Rule of Civil Procedure 23, and enter an order certifying the Class defined above and appointing Plaintiff as Class representative;

B.     Declare that Defendant YouTube willfully circumvented copyright protections intended to protect Plaintiff's and Class Members' works;

C.     Award statutory damages (up to the maximum allowed by law per violation), injunctive relief, and attorney's fees and costs under 17 U.S.C. §1203;

D.     Award equitable relief Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of Plaintiff's and Class Members' copyright-protected content, including a preliminary and permanent injunction requiring that Defendant and its officers, agents, servants, employees, attorneys, directors,

CLASS ACTION COMPLAINT

successors, assigns, licensees, and all others in active concert or participation with any of them, cease infringing, or causing, aiding, enabling, facilitating, encouraging, promoting, inducing, or materially contributing to or participating in the infringement of any of Plaintiff's or the Class Members' exclusive rights under federal law;

      E.    Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

      F.    Award pre-judgment and post-judgment interest as provided by law;

      G.    To the extent an adequate remedy at law does not exist, grant appropriate equitable relief to which Plaintiff and Class members are entitled.

      H.    Award reasonable attorneys' fees and costs as permitted by law; and

      I.    Grant such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

Dated: February 23, 2026

*/s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310-474-9111
Facsimile:   310-474-8585

Carter Greenbaum (SBN 344692)
carter@greenbaumolbrantz.com
**GREENBAUM OLBRANTZ LLP**
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
Tel: 212-732-6837

*Counsel for Plaintiff and the Proposed Class*

13

CLASS ACTION COMPLAINT